UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EAST COAST ADVANCED PLASTIC SURGERY, | :<br>:<br>: |
| Plaintiff, | :  Civ. No. 18-7718 (KM) (MAH)<br>: |
| v. | :<br>: |
| HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, JOHN AND JANE DOES 1-10 and ABC CORPORATIONS 1-10, | :<br>:<br>:<br>: |
| Defendants. | :  REPORT AND RECOMMENDATION<br>:<br>: |

## I. INTRODUCTION

This matter comes before the Court on the motion of Plaintiff, East Coast Advanced Plastic Surgery ("ECA"), to remand the action to the Superior Court of New Jersey Law Division, Bergen County. *See* Plaintiff's Motion to Remand, D.E. 5. The District Court referred this matter to the Undersigned to issue a Report and Recommendation. This Court has considered the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons set forth herein, the Court respectfully recommends that the District Court grant Plaintiff's motion and remand this matter to the Superior Court of New Jersey, Law Division, Bergen County.

## II. BACKGROUND

Plaintiff ECA is a medical practice group with offices located in Essex County, New Jersey. Complaint, D.E. 1-1, at ¶¶ 1, 5, 13. On January 29, 2015, two doctors employed or

contracted by ECA, Drs. Cerio and Loghmanee, performed a double mastectomy and deep inferior epigastric perforator ("DIEP") reconstructive surgery on Patient AR. *Id.* at ¶¶ 18-21. AR had health insurance through the UFCW Local 464A Welfare Services Fund (the "Fund"). The Fund was a self-insured plan that Defendant Horizon Blue Cross Blue Shield of New Jersey ("BCBS") administered.

Understanding that BCBS was the Fund's agent, ECA sought pre-authorization from BCBS before Drs. Cerio and Loghmanee performed the surgery. According to ECA, BCBS knew that ECA was an out-of-network provider, and yet responded that pre-authorization was not necessary for this procedure. *Id.* at ¶ 27. The Fund has since posited that BCBS was not its authorized representative, and that BCBS was not authorized to represent that pre-authorization was unnecessary. *Id.* at ¶ 29.

Plaintiff billed BCBS $207,135.00 for Dr. Cerio and $262,975.00 for Dr. Loghmanee, for a total of $470,210.00 for the procedure. *Id.* at ¶¶ 22-24. According to Plaintiff, BCBS paid a total of $9,306.63, leaving a balance of $460,903.37.[1] *Id.* at ¶ 25.

ECA filed the instant action on March 7, 2018 in New Jersey Superior Court, Law Division, Bergen County. *See* Exh. A to Notice of Removal, D.E. 1-1. ECA's Complaint sets forth claims for breach of contract (Count One), estoppel (Count Two), account stated (Count Three), and fraudulent inducement (Count Four). *See* Complaint, D.E. 1-1. As ECA puts it, "this dispute is about the amount of the payment, not the right to payment." Brief in Support of Motion to Remand, May 16, 2018, D.E. 5-1, at 7.

---

[1] The Complaint represents that the total billed was $470,210. Complaint, D.E. 1-1, at ¶ 24. The Court notes that the total of Dr. Cerio's bill ($207,135.00) and Dr. Loghmanee's bill ($262,975.00) is $470,110. Accordingly, the alleged underpayment is either $460,903.37 or $460,803.37. The disparity is inconsequential to this Court's analysis of the motion to remand.

On April 16, 2018, BCBS removed this case from state court on the basis of federal question pursuant to 28 U.S.C. § 1331.  *See* Notice of Removal, D.E. 1.  Although there is no ERISA claim explicitly plead in the Complaint, BCBS contends that ERISA completely preempts ECA's state law claims.  *Id*.  Accordingly, BCBS argues that this Court has jurisdiction under 28 U.S.C. § 1331.  *Id.*  ECA filed the motion to remand on May 16, 2018.  ECA contends that it lacks standing to assert an ERISA claim, and that its claims are independent state law causes of action that are not preempted by ERISA.

### III.   Analysis

A decision to remand is dispositive.  *In re U.S. Healthcare,* 159 F. 3d 142, 146 (3d Cir. 1998) ("[A]n order of remand is no less dispositive than a dismissal order of a federal action for lack of subject matter jurisdiction where a parallel proceeding is pending in the state court."). Accordingly, this Court addresses Plaintiff's motion via Report and Recommendation.

Removal of a civil case to a federal court is governed by 28 U.S.C. § 1441.  A defendant may remove an action brought originally in state court only if the plaintiff could have filed the complaint within the original jurisdiction of the federal court.  28 U.S.C. § 1441(b); *see also* 28 U.S.C. §1441(a) ("Except as otherwise provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant . . . to the district court of the United States...."). A federal court lacking subject matter jurisdiction over a case must remand the matter to state court.  28 U.S.C. § 1447(c); *see Farina v. Nokia, Inc.*, 625 F.3d 97, 114 (3d Cir. 2010) (noting that a federal court cannot proceed without subject matter jurisdiction, nor can a party waive such jurisdiction). BCBS, as the party asserting federal jurisdiction by way of removal, bears the burden of establishing that subject matter jurisdiction exists at all stages in which the case is properly

before the federal court.  *Samuel–Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004).  Section 1441 is to be construed strictly; all doubts must be resolved in favor of remand.  *Id*.; *see also Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851 (3d Cir. 1992) ("[R]emoval statutes are to be strictly construed against removal and all doubts should be resolved in favor of remand.") (citations omitted) (internal quotations marks omitted); *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 29 (3d Cir. 1985) ("Because lack of [federal] jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, the removal statute should be strictly construed and all doubts should be resolved in favor of remand.") (citations omitted).

In determining whether an action should be remanded to state court, "a district court must focus on the operative complaint at the time the petition for removal was filed."  *Group Hospitalization & Med. Servs. v. Merck-Medco Managed Care, LLP.* 295 F.Supp.2d 457, 461-462 (D.N.J. 2003).  District courts have federal question subject matter jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  In order for a claim to arise under federal law, the "well-pleaded complaint" must establish "either that federal law creates the cause of action or that the plaintiffs['] right to relief necessarily depends on resolution of substantial question of federal law."  *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 27-28 (1983).

An exception to the well-pleaded complaint rule is the doctrine of complete preemption, which "'operates to confer original federal jurisdiction notwithstanding the absence of a federal cause of action on the face of the complaint.'"  *New Jersey Carpenters and the Trs. Thereof v. Tishman Constr. Corp.* 760 F.3d 297, 302 (3d Cir. 2014) (quoting *In re U.S. Healthcare, Inc.,* 193 F.3d 151, 160 (3d Cir. 1999)).  The Supreme Court has recognized the "complete

preemption" doctrine in claims pursuant to § 502(a) of ERISA. *See Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58 (1987). Accordingly, where § 502(a) preempts a plaintiff's claims, federal jurisdiction is proper.

Section 502(a) completely preempts state law claims where: (1) the plaintiff could have brought the action under § 502(a); and (2) no independent legal duty supports the plaintiff's claims. *See Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan,* 388 F.3d 393, 400 (3d Cir. 2004); *see also Aetna Health Inc. v. Davila,* 542 U.S. 200, 209 (2004). Complete preemption requires the defendant to satisfy both prongs of the test. *N.J. Carpenters,* 760 F.3d at 303. Here, neither party disputes that the plan at issue qualifies as an ERISA plan under 29 U.S.C. § 1002(1). ECA argues, however, that the Court should remand this matter because BCBS fails both prongs of *Pascack/Davila*. Accordingly, the Court will consider each prong in turn.

The first prong—*i.e.*, whether the plaintiff could have brought the action under § 502(a)—requires a court to resolve two issues. The first issue under Prong I regards standing, specifically "whether the plaintiff is the type of party that can bring a claim pursuant to" § 502(a). *Progressive Spine & Orthopaedics, LLC v. Anthem Blue Cross Blue Shield*, No. 17-536, 2017 WL 4011203, at *5 (D.N.J. Sept. 11, 2017). The second issue under Prong I is "whether the actual claim that the plaintiff asserts can be construed as a colorable claim for benefits pursuant to" § 502(a). *Id.* As to standing, a claim is subject to ERISA preemption if it is brought by a beneficiary or participant[2] "to recover benefits due to him under the terms of the plan, or to

---

[2] A "participant" is

> any employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an

clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Additionally, a healthcare provider may have derivative standing by virtue of an assignment by a beneficiary or plan participant. *North Jersey Brain & Spine Center v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015).

There is no dispute that ECA was neither a plan participant nor a beneficiary. However, the parties disagree over whether AR assigned her legal rights under the Plan to ECA. The Third Circuit's decision in *North Jersey Brain & Spine Center v. Aetna Inc. ("NJBSC")*, 801 F.3d 369 (3d Cir. 2015) guides this Court's analysis. In that case, NJBSC treated members of an ERISA-governed healthcare plan administered by Aetna. The member-patients had executed authorizations assigning to NJBSC "all payments for medical services rendered to myself or my dependents." *NJBSC*, 801 F.3d at 370-71. NJBSC also retained the right to bill the member-patients for any portion of the services not covered by insurance. *Id.* at 371. After rendering services, NJBSC sued Aetna. NJBSC claimed that Aetna refused to pay or had underpaid for the services NJBSC had rendered.

At issue before the Third Circuit was what type of assignment was sufficient to confer derivative standing on the provider. NJBSC argued that simply assigning the right to payment sufficed, while Aetna contended the patient must assign "not just the right to payment but also the patient's legal claim to that payment if a provider is to file suit." *Id.* at 372. Reasoning that "[a]n assignment of the right to payment logically entails the right to sue for non-payment[,]" the

---

employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7). A "beneficiary" is "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

Third Circuit held that "as a matter of federal common law, when a patient assigns payment of insurance benefits to a healthcare provider, that provider gains standing to sue for that payment under ERISA § 502(a)." *Id.*

In this case, ECA contends that there was no assignment. In fact, ECA argues, the Summary Plan Description ("SPD") contained an anti-assignment provision that precluded any derivative assignment. ECA relies on language in the SPD under the subheading "Assignments of Benefits." That language provided as follows:

> The Plan pays benefits only for out-of-pocket healthcare expenses covered by the Plan. These benefits are not transferable. For the convenience of Members, the Plan will submit payment for the Covered Services directly to a healthcare service provider. . . if the Member has executed a valid assignment of benefits and/or right to payment, either upon commencement of the treatment of service or afterwards.

SPD, Exhibit B to Notice of Removal, D.E. 1-2, page 14.

The Court does not read the foregoing language as an anti-assignment provision. Although that language could be read to prohibit a participant from transferring benefits coverage to a non-participant, such as a participating union member attempting to transfer coverage to a non-participating union member, the very next sentence clearly contemplates and provides for an assignment to a healthcare provider. Other language in the SPD buttresses this interpretation. That language provided:

> Your healthcare provider may submit bills for benefits directly to the Plan only if you have executed a valid assignment of benefits or right to payment, either upon commencement of healthcare treatment or services or afterwards. In either case, if you have executed a valid assignment of benefits in favor of a healthcare provider, all further correspondence regarding the claim for the healthcare treatment, services or products provided will be sent to the healthcare provider submitting the bill, with copies sent to you.

*Id.* at page 20. This language further supports the conclusion that the Plan did not prohibit an assignment of benefits to healthcare providers such as ECA, and instead expressly provided for it.

Next, the Court finds that ECA had a valid assignment. AR signed a "Member Assignment of Benefits and Authorization for a Designated Representative to Appeal a Determination," which stated that "[i]n consideration of services rendered, including but not limited to surgery, office visits, use of facility, emergent care, etc., I assign to the provider of service. . . any benefits made on my behalf to the above-mentioned non-participating provider." *See* Certification of Michael Holzapfel ("Holzapfel Cert."), Exh. D, D.E. 17-5. The Member Assignment form establishes that AR assigned any benefits she had under the Plan to ECA, and satisfies the standard articulated in *NJBSC*. Therefore, the Court finds that AR validly assigned her rights to ECA, sufficient to confer derivative standing on ECA.

Standing alone, however, does not necessarily convert a state-law cause of action into a federal claim. Indeed, even where a plaintiff "'ha[s] received a valid assignment and could have filed under ERISA, the mere existence of an assignment does not convert [the plaintiff's] state law' claims into an ERISA claim for benefits." *Atlantic Shore Surgical Associates v. Local 464*, No. 17-12166, 2018 WL 3611074, at *3 (D.N.J. Jul. 27, 2018) (citing *North Jersey Brain & Spine Ctr. v. Aetna Life Ins. Co.*, No. 16-1544, 2017 U.S. Dist. LEXIS 22710, at *11 (D.N.J. Feb. 17, 2017) (recommending that District Court remand to state court) (adopted by *North Jersey Brain & Spine Ctr. v. Aetna Life Ins. Co.*, No. 16-1544, 2017 U.S. Dist. LEXIS 39769 (D.N.J. Mar. 20, 2017)). Therefore, the Court must next consider whether ECA's claims "can be construed as a colorable claim for benefits" under § 502(a).

Section 502(a) recognizes the participant's or beneficiary's right to sue "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132. *See also Emergency Physicians of St. Clare's v. United Health Care*, Civ. No. 14-404, 2014 WL 7404563, *5 (D.N.J. Dec. 29, 2014) ("an action must be 'a suit complaining of denial of coverage for medical care'") (quoting *Aetna*, 542 U.S. at 210).

As noted earlier, the Complaint alleges claims for, inter alia, breach of contract and fraudulent inducement. *See* Complaint, D.E. 1-1. ECA argues that its claims are based on an implied-in-fact contract that was created based on its dealings with BCBS, and specifically when it inquired of BCBS whether pre-authorization for AR's surgery was necessary. See, e.g., Complaint, D.E. 1-1, at ¶¶ 32-34. Further, ECA challenges the amount of reimbursement, not the provision of benefits under the Plan. Accordingly, ECA contends, those claims are independent of the Plan.

The Third Circuit has distinguished disputes related to the amount to be reimbursed from disputes related to the right to reimbursement. In *Pascack Valley Hospital,* the Third Circuit held that ERISA does not preempt disputes regarding the amount of payment made to a provider. 388 F.3d 393, 403-04 (3d Cir. 2004). The Third Circuit reasoned that the provider had an independent breach-of-contract action against the insurer because "the dispute here is not over the right to payment, which might be said to depend on the patients' assignments to the Hospital, but the amount, or level, of payment. . . ." *Id.* (quotation marks and alterations omitted); *see also CardioNet, Inc. v. Cigna Health Corp.,* 751 F.3d 165, 177-78 (3d Cir. 2014) (holding that claims "seeking coverage under a benefit plan, and claims seeking reimbursement for coverage provided" are distinguishable and ERISA does not preempt the latter). Accordingly, courts

within this district have consistently held that § 502(a) does not preempt a dispute over the amount of payment to the provider. *See, e.g., East Coast Advanced Plastic Surgery v. Amerihealth,* No. 17-8409, 2018 WL 1226104, *3 (D.N.J. Mar. 9, 2018) (remanding claims sounding in implied-in-fact contract for inadequate reimbursement because "[d]isputes over the amount of reimbursement are not preempted by ERISA"); *Emergency Physicians of St. Claire's v. United Health Care,* No. 14-404, 2014 WL 7404563, at * 5 (D.N.J. Dec. 29, 2014) (relying on *Pascack Valley* and *CardioNet* to hold that ERISA "does not [] preempt claims over the amount of coverage provided, which includes disputes over reimbursement.").

In this case, ECA challenges the amount of reimbursement it received from BCBS. It argues that BCBS's representation, as the administrator for the Fund, authorizing the surgery and that pre-authorization was not necessary created an implied-in-fact contract entitling ECA to reimbursement according to usual and customary rates based on the parties' course of dealing. *See* Complaint, D.E. 1-1, at ¶¶ 32-33.  ECA further alleges that the amount actually paid fell well short of a fair and reasonable rate based on the implied-in-fact contract. *Id.* at ¶ 35. Those allegations form the basis of ECA's breach, promissory estoppel, and account stated claims. ECA further claims that in making that representation that pre-authorization was not necessary, BCBS effectively authorized the surgery and induced ECA to perform it. *See id.* at ¶ 49 ("By advising Plaintiff that a pre-surgery authorization for the DIEP flap procedure was not necessary in order to establish coverage, Defendant BCBS inherently provided the necessary authorization, and thereby induced Plaintiff to provide the medical services request by Patient, 'AR.'"). *See also, id.* at ¶ 30 ("While Defendant BCBS was aware that Plaintiff was an out-of-network provider, Defendant never disclosed that payments made for the procedures would be denied in full, paid far below the usual and customary rates for these services, or that the codes would be

ignored and unilaterally substituted for less-costly codes. To the contrary, Defendant induced Plaintiff to provide the medical services with the explicit knowledge that it never intended to pay the amounts it was obligated to pay."). The Court cannot discern, nor has BCBS explained, how interpretation of the Plan is necessary to resolve these claims. Instead, the allegations make clear that ECA is alleging underpayment. It is asserting rights pursuant to an implied-in-fact contract between itself and BCBS, wholly separate from the Plan and premised on whether BCBS could authorize the surgery, represent to ECA that pre-authorization was unnecessary, and whether BCBS made such a representation. Whether ECA can prove those allegations is an issue for another day. For purposes of the motion to remand, the Court is satisfied that interpretation of the Plan is not necessary to adjudicate ECA's underpayment claims, and that they are not colorable claims under § 502(a).

BCBS contends that ECA's claims are within the scope of ERISA because ECA's Complaint "on its face contends that the self-funded Union Plan underpaid benefits" and that Plaintiff should have been paid an amount deemed reasonable and customary. Opp'n Br., D.E. 17, at page 23. BCBS argues that claims "involving disputes over the quantum of benefits fall equally within ERISA's preemptive scope." However, BCBS mischaracterizes ECA's claims. ECA challenges the amount BCBS paid for AR's surgery, not whether ECA has a right to be paid under the Plan. Indeed, even the cases on which BCBS relies distinguish the provider's right to be paid versus a dispute over the amount. For example, BCBS relies on *Enigma Management Corp. v. Multiplan, Inc.,* 994 F.Supp.2d 290 (E.D.N.Y. 2014). There, the court stated that "[c]laims involving the right to payment 'implicate coverage and benefits established by the terms of the ERISA benefit plan' and can be brought under ERISA's civil enforcement scheme. By contrast, claims involving the amount of payment . . . implicate duties separate

from the ERISA plan and are not the type that be brought under ERISA." *Id.* at 298 (citing *Montefiore Med. Ctr. v. Teamsters Local 272*, 642 F.3d. 321, 331 (2d Cir. 2011) (internal citations omitted)).

BCBS also relies on an unreported decision from the Superior Court of New Jersey, Appellate Division, *Yodzis v. Tilak*, 2009 WL 465448 (N.J. Super. Ct. App. Div. Feb. 26, 2009). However, that case is readily distinguishable. In *Yodzis,* the Appellate Division considered whether ERISA preempted state law claims for negligence and medical malpractice when a physician, who was the plan fiduciary and not a treating physician, denied pre-authorization of a benefit under the health plan. The patient had instituted negligence and medical malpractice claims against his health insurance carrier and the physicians who served as medical and clinical directors of the health insurance carrier. The Appellate Court concluded that ERISA preempted the claims because a non-physician's benefits determination was tantamount to a decision by a plan fiduciary under ERISA. Fundamentally, however, *Yodzis* concerned the right to coverage, not the amount of payment. Therefore, BCBS has not met its burden to show that ECA's claims are colorable under ERISA.

Having found that BCBS has not met its burden of proof under the first prong of the *Pascack/Davila* test, the Court need not reach the second prong.[3]

---

[3] However, even if BCBS satisfied the first prong, BCBS fails to satisfy the second prong of the *Pascack/Davila* test. The second prong asks whether there is an independent legal duty supporting the plaintiff's claim. A legal duty is considered independent if "it is not based on an obligation under an ERISA plan or it would exist whether or not an ERISA plan existed." *New Jersey Carpenters,* 760 F.3d at 303 ("In other words, if the state law claim is not derived from, or conditioned upon, the terms of an ERISA plan, and nobody needs to interpret the plan to determine whether that duty exists, then the duty is independent.") (internal quotations omitted).

BCBS argues that this prong is met because this case "involved a dispute over the extent of the benefits available under the Plan" and "the concept of preauthorization." BCBS relies on a Second Circuit decision to argue that "a provider's pre-service phone inquiry to the plan was

## IV. CONCLUSION

For the reasons set forth above, this Court respectfully recommends that the District Court grant Plaintiff's motion to remand, and remand this matter to the Superior Court, Law Division, Bergen County.

The parties are reminded that they have fourteen (14) days to file and serve objections to this Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Civil Rule 7.1(c)(2).

---

not independent of the plan itself because the plan's terms required it." Opp'n Br., D.E. 17, at 27 (citing *Montefiore Medical Center v. Teamsters Local 272*, 642 F.3d 321, 332 (2d Cir. 2011)). In *Montefiore,* the Second Circuit held that phone calls requesting verification by the in-network provider that a patient was eligible and services were covered under the plan "did not create a sufficiently independent duty[.]" *Id.* at 332. The Second Circuit noted that this pre-approval process was "expressly required by the terms of the [p]lan itself and [was] therefore inextricably intertwined with the interpretation of Plan coverage and benefits." *Id*. BCBS argues that here, as in *Montefiore*, some procedures under the plan require pre-authorization and the fact that ECA made a routine inquiry prior to service does not remove this case from ERISA's scope.

BCBS's argument is unpersuasive. First, BCBS fails to provide any support for its contention that some procedures require pre-authorization. Further, courts in this district have allowed that an independent legal duty may arise where the claims are based on an alleged implied contract between a provider and plan administrator arising out of the course of dealings between the parties. In *North Jersey Brain & Spine Center v. Aetna Life Ins. Co.*, No. 16-1544, 2017 U.S. Dist. LEXIS 22710 (D.N.J. Feb. 17, 2017), the Court noted that while the plaintiff was an out-of-network provider with no independent, written contract with the insurer, the plaintiff was "the master of its complaint and has chosen to plead its claims based on the existence of an implied contract." *North Jersey Brain & Spine Center v. Aetna Life Ins. Co.,* 2017 U.S. Dist. LEXIS 22710, at *13. The court reasoned that it "need not determine at this point whether [the plaintiff] sufficiently has plead its breach of implied contract action so as to state a claim upon which relief can be granted." *Id*. at *15. *See also East Coast Advanced Plastic Surgery Center*, 2018 WL 1226104, *3 (finding that for purposes of remand analysis, plaintiff adequately alleged claim for breach of implied-in-fact contract to satisfy second prong of *Pascack*). ECA similarly has chosen to allege an implied-in-fact contract based on its course of dealings with BCBS. As such, the Court finds that for purposes of the motion to remand, the Complaint adequately alleges an independent legal duty separate from the plan for purposes of the second prong of the *Pascack/Davila* test. In reaching this conclusion, this Court takes no position on the merits *vel non* of ECA's claims.

                *s/ Michael A. Hammer*
                **Hon. Michael A. Hammer**
                **United States Magistrate Judge**

Date:  September 14, 2018